# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

BRUCE CEDELL, a single man)
                                    )

            Petitioner,       )        No. 85366-5

                                      )

    v.                      )        En Banc

                                      )

FARMERS INSURANCE        )
COMPANY OF WASHINGTON,   )
doing business in the State of     )
Washington,                )

                                      )

          Respondent.    )      Filed  February 21, 2013
_____)

CHAMBERS, J.* — Bruce Cedell's home was destroyed by fire.  After being unresponsive for seven months, his insurer threatened to deny coverage and made a take it or leave it one time offer for only a quarter of what the court eventually found the claims to be worth.  Cedell brought suit alleging bad faith.  The company resisted disclosing its claims file, among other things, and Cedell moved to compel production.  After a hearing and a review of the claims file in camera, the trial court granted Cedell's motion.  On interlocutory review, the Court of Appeals held that the attorney-client privilege applies to a bad faith claim by a first party insured, that the fraud exception to the attorney-client privilege requires a showing of actual fraud, and that the trial court erred in reviewing Cedell's claims file in

---

*Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

camera because Cedell had not made a sufficient prima facie showing of fraud. *Cedell v. Farmers Ins. Co. of Wash.*, 157 Wn. App. 267, 269-70, 237 P.3d 309 (2010). The Court of Appeals vacated the trial court's sanctions and discovery orders. This case turns on the application and scope of the attorney-client privilege in a claim for insurance bad faith. We affirm in part, reverse in part, and remand to the trial for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Cedell insured his home in Elma with Farmers Insurance Company of Washington (Farmers) for over 20 years. In November 2006, when Cedell was not at home, a fire broke out in his bedroom. His girl friend, Ms. Ackley, called the fire department and carried their two month old child outside. The fire completely destroyed the second story of the home. Ackley claimed that a candle had started the fire.

The Elma Fire Department concluded that the fire was "likely" accidental. Clerk's Papers (CP) at 477. Farmers' fire investigator found "no physical evidence supporting an incendiary origin" and agreed with the fire department that a candle was "a possible, or even probable, source of ignition . . . consistent with the remaining physical evidence." *Id*. at 482. He stated that Ackley's "admission that she lit a 'flower candle' on the headboard" was "consistent with the acute burn patterns seen to the headboard and mattress," explaining that "[c]andles with foreign objects imbedded are frequent causes of accidental fires when the objects, such as dried flowers, substantially alter the candle's burning characteristics." *Id.* Farmers,

2

nevertheless, delayed its coverage determination, noting that Ackley (who was not an insured) had given inconsistent statements.[1] Cedell alleges that Farmers ignored repeated phone calls and that he was forced to file a claim with the office of the insurance commissioner and ultimately, eight months after the fire, hire an attorney to elicit action from his insurer.

In January 2007, a Farmers adjuster estimated that Farmers' exposure would be about $70,000 for the house and $35,000 for its contents. A few months later, a Farmer's estimator, Joe Mendoza, concluded that the fire-related damage to the residence alone was about $56,498. Farmers hired an attorney, Ryan Hall, to assist in making a coverage determination. Hall examined Cedell and Ackley under oath. In July 2007, Hall sent Cedell a letter stating that the origin of the fire was unknown and that Farmers might deny coverage based on a delay in reporting and Ackley's and Cedell's inconsistent statements about the fire.[2] The letter extended to Cedell a one-time offer of $30,000, good for 10 days. Cedell tried unsuccessfully to contact Farmers about the offer during the 10 days, but no one from Farmers returned his call.

In November 2007, Cedell sued Farmers, alleging, among other things, that it acted in bad faith in handling his claim. In response to his discovery requests, Farmers produced a heavily redacted claims file, asserting that the redacted

---

[1] Apparently, Ackley had admitted that she and others at the house might have consumed methamphetamine on the day of the fire. Cedell himself swore under oath that he had not consumed methamphetamines and did not know Ackley had.

[2] The redacted claims file suggests that Cedell called Farmers to tell them about the fire on November 27, 2006, two days after the fire.

information was not relevant or was privileged. Farmers also declined to answer some of Cedell's interrogatories on the ground of attorney-client privilege, including Cedell's question of why it "gave Bruce Cedell 10 days to either accept or reject the above offer." CP at 5.

Cedell filed a motion to compel. Relying on *Soter v. Cowles Publ'g Co.,* 131 Wn. App. 882, 895, 130 P.3d 840 (2006), *aff'd,* 162 Wn.2d 716, 174 P.3d 60 (2007), Cedell contended that "the claim of privilege and work product in bad faith litigation is severely limited and does not apply" to the insurer's benefit in a bad faith action by a first party insured. CP at 2-3. Cedell moved for disclosure or, in the alternative, for an in camera review of the files. Farmers opposed the motion, argued that Cedell had to make an initial showing of civil fraud to obtain the full claims file, and sought an order "protecting from discovery all privileged communication with its counsel Ryan Hall." CP at 363; Verbatim Report of Proceedings (VRP) (Feb. 23, 2009) at 14.

Judge David Edwards held a hearing to consider the competing motions. He concluded that the insured was not required to make a showing of civil fraud before the claims file could be released, but instead merely "some foundation [in] fact to support a good faith belief by a reasonable person that [] there may have been wrongful conduct which could invoke the fraud exception." VRP (Feb. 23, 2009) at 20-21 (citing *Escalante v. Sentry Ins. Co.*, 49 Wn. App. 375, 743 P.2d 832 (1987), *overruled on other grounds by Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn.2d 766, 15 P.3d 640 (2001), *overruled by Smith v. Safeco Ins. Co.,* 150 Wn.2d

478, 78 P.3d 1274 (2003)). Judge Edwards found that (1) Cedell was not home at the time of the fire, (2) the fire department and Farmers' fire investigator had concluded the fire was accidental, (3) Farmers knew the fire had left Cedell homeless, (4) a Farmers adjuster appraised the damage to the house at $56,498.84, (5) another adjustor estimated the damage at $70,000 for the house and $35,000 for its contents, (6) Farmers made a one-time offer of $30,000 with an acceptance period that fell when Hall was out of town, (7) Farmers threatened to deny Cedell coverage and claimed he misrepresented material information without explanation, and (8) the damage to the house was eventually valued at over $115,000 and more than $16,000 in code updates. The judge found these facts "adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to invoke the fraud exception set forth in *Escalante* to the attorney-client privilege had occurred" and ordered the claim files produced for an in camera review. CP at 494-95; VRP at 21. He also awarded Cedell his attorney fees for the motion, capped at $2,500, and assessed punitive sanctions against Farmers of $5,000, payable to the court.

After reviewing the documents in camera, Judge Edwards, relying on *Barry v. USAA*, 98 Wn. App. 199, 205, 989 P.2d 1172 (1999), revised his view of what was required to release an unredacted claim file in a first party bad faith action:

> In the context of a claim arising from a residential fire, the insurer owes the insured a heightened duty – a fiduciary duty, which by its nature is not, and should not be, adversarial. Under such circumstances, the insured is entitled to discover the entire claims file

kept by the insured without exceptions for any claims of attorney-client privilege.

CP at 487. He ordered Farmers to provide Cedell with all documents that it had withheld or redacted based on the attorney-client privilege, increased the sanctions payable to Cedell to $15,000, and increased the sanctions payable to the court to $25,000.

The Court of Appeals granted discretionary interlocutory review and reversed. The Court of Appeals found that "a factual showing of bad faith" was insufficient to trigger an in camera review of the claims file. *Cedell*, 157 Wn. App. at 278. The court below impliedly found that a showing that the insurer used the attorney to further a bad faith denial of the claim was not sufficient grounds to pierce the attorney-client privilege. *Id.* at 276-78.

We granted review. The Washington State Association for Justice Foundation, the Washington Defense Trial Lawyers, and the National Association of Mutual Insurance Companies submitted briefs as amici curiae.

ANALYSIS

A.      Standard of Review

We review a trial court's discovery orders for abuse of discretion. *T.S. v. Boy Scouts of Am.,* 157 Wn.2d 416, 423, 138 P.3d 1053 (2006) (citing *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 778, 819 P.2d 370 (1991)). We will reverse a trial court's discovery rulings "only 'on a clear showing' that the court's exercise of discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* (quoting *State ex rel. Carroll v. Junker*, 79

Wn.2d 12, 26, 482 P.2d 775 (1971)). If the trial court rested its decision on an improper understanding of the law, we may remand for application of the correct one. *Dreiling v. Jain,* 151 Wn.2d 900, 907, 93 P.3d 861 (2004) (citing *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 369, 16 P.3d 45 (2000)).

B.      Scope of Discovery Generally

The scope of discovery is very broad. *Coburn v. Seda*, 101 Wn.2d 270, 276, 677 P.2d 173 (1984) (citing *Bushman v. New Holland Div. of Sperry Rand Corp.*, 83 Wn.2d 429, 434, 518 P.2d 1078 (1974)). The right to discovery is an integral part of the right to access of the courts embedded in our constitution. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 776-77, 280 P.3d 1078 (2012) (citing *Doe,* 117 Wn.2d at 780-81). As we noted recently:

> Besides its constitutional cornerstone, there are practical reasons for discovery. Earlier experiences with a "blindman's bluff" approach to litigation, where each side was required "literally to guess at what their opponent would offer as evidence," were unsatisfactory. Michael E. Wolfson, *Addressing the Adversarial Dilemma of Civil Discovery*, 36 Clev. St. L. Rev. 17, 22 (1988). As modern day pretrial discovery has evolved, it has contributed enormously to "a more fair, just, and efficient process." *Id.* at 20. Effective pretrial disclosure, so that each side knows what the other side knows, has narrowed and clarified the disputed issues and made early resolution possible. As importantly, early open discovery exposed meritless and unsupported claims so they could be dismissed. It is uncontroverted that early and broad disclosure promotes the efficient and prompt resolution of meritorious claims and the efficient elimination of meritless claims.

*Lowy,* 174 Wn.2d at 777. Because discovery is, by design, intended to be broad, a party wishing to assert a privilege may not simply keep quiet about the information

it believes is protected from discovery; it must either, reveal the information, disclose that it has it and assert that it is privileged, or seek a protective order. *Magana v. Hyundai Motor Am.,* 167 Wn.2d 570, 584, 220 P.3d 191 (2009) (citing CR 37(d)); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 354, 858 P.2d 1054 (1993). A health care provider seeking to assert a privilege must seek a protective order. *Lowy*, 174 Wn.2d at 789. The best practice is for the trial court to require a document log requiring grounds stated with specificity as to each document. *See Dreiling,* 151 Wn.2d at 916-17; *see also Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 538-39, 199 P.3d 393 (2009) (emphasizing value of privilege log). The burden of persuasion is upon the party seeking the protective order. *See* CR 26(c); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (opponent of disclosure bore "heavy burden of showing why discovery [should be] denied").

      C.     Attorney-Client Privilege in Insurance Bad Faith Claims

When an insured asserts bad faith against his insurer in the way the insurer has handled the insured's claim, unique considerations arise. There are numerous recognized actions for bad faith against medical, homeowner, automobile, and other insurers in which the insured must have access to the claims file in order to prove the claim. For example, there are bad faith investigations, *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992); untimely investigations, *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 793, 16 P.3d 574 (2001); failure to inform the insured of available benefits, *Anderson v. State Farm Mut. Ins.*

*Co.*, 101 Wn. App. 323, 2 P.3d 1029 (2000); and making unreasonably low offers, *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 915 P.2d 1140 (1996). A first party bad faith claim arises from the fact that the insurer has a quasi-fiduciary duty to act in good faith toward its insured. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 128, 196 P.3d 664 (2008); *Van Noy,* 142 Wn.2d at 793. The insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith. Implicit in an insurance company's handing of claim is litigation or the threat of litigation that involves the advice of counsel. To permit a blanket privilege in insurance bad faith claims because of the participation of lawyers hired or employed by insurers would unreasonably obstruct discovery of meritorious claims and conceal unwarranted practices.

To accommodate the special considerations of first party insurance bad faith claims, except for under insured motorist (UIM) claims, the insured is entitled to access to the claims file. As our Court of Appeals has observed, "it is a well-established principle in bad faith actions brought by an insured against an insurer under the terms of an insurance contract that communications between the insurer and the attorney are not privileged with respect to the insured." *Barry*, 98 Wn. App. at 204 (citing *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 326 (D. Mont. 1988)); *accord Escalante*, 49 Wn. App. at 394; *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699 (D. Mont. 1986). In *Silva*, the Montana court noted, "The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of

good faith in processing the insured's claim." *Silva,* 112 F.R.D. at 699-700.

*Barry* was a UIM case, and of course, we recognize a difference between UIM bad faith claims and other first party bad faith claims. The UIM insurer steps into the shoes of the tortfeasor and may defend as the tortfeasor would defend. Thus, in the UIM context, the insurance company is entitled to counsel's advice in strategizing the same defenses that the tortfeasor could have asserted. However, even in a claim alleging bad faith in handling of a UIM claim, there are limits to the insurer's attorney-client privilege.[3] Where there is a valid attorney-client privilege, the fraud exception is one of the exceptions that will pierce the privilege.[4] In a UIM context, the *Escalante* court set forth a two-step process to limit attorney-client privilege:

> First, the court determines whether there is a factual showing adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to evoke the fraud exception has occurred. Second, if so, the court subjects the documents to an in camera inspection to determine whether there is a foundation in fact for the charge of civil fraud. The in camera inspection is a matter of trial court discretion.

*Barry*, 98 Wn. App. at 206 (citations omitted) (citing *Escalante*, 49 Wn. App. at

---

[3] The Court of Appeals misapprehended the application of the fraud exception. Both *Escalante* and *Barry* involved UIM claims in which the insurer was entitled to assert the attorney-client privilege.

[4] Of course, there is no reason to limit the grounds for piercing the privilege in the UIM context to civil fraud; it was merely the particular grounds at issue in that case. Since conduct short of fraud constitutes bad faith, requiring a threshold showing of fraud to reach critical evidence requires too much. *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 917, 792 P.2d 520 (1990) ("an insurer's denial of coverage, without reasonable justification, constitutes bad faith"). As a leading treatise notes, bad faith in this context "is not the equivalent of actual fraud." 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D § 204:116, at 204-140 (2005). In the context of first party insurance, bad faith may often be tantamount to civil fraud.

394; *Seattle Nw. Sec. Corp. v. SDG Holding Co.*, 61 Wn. App. 725, 740, 812 P.2d 488 (1991)).

      D.     Balancing Insurers Need for Attorney-Client Privilege and the Insured's Need to Access the Claims File

      We recognize that two principles we hold dear are in tension in insurance bad faith claims. The purpose of discovery is to allow production of all relevant facts and thereby narrow the issues, and promote efficient and early resolution of claims. The purpose of attorney-client privilege is to allow clients to fully inform their attorneys of all relevant facts without fear of consequent disclosure. *Escalante*, 49 Wn. App. at 393 (citing *Coburn,* 101 Wn.2d at 274). First party bad faith claims by insureds against their own insurer are unique and founded upon two important public policy pillars: that an insurance company has a quasi-fiduciary duty to its insured and that insurance contracts, practices, and procedures are highly regulated and of substantial public interest. *Van Noy*, 142 Wn.2d at 793; *St. Paul Fire*, 165 Wn.2d at 128-29.

      To protect these principles, we adopt the same basic approach as the Court of Appeals did in *Barry*. We start from the presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant. *Barry*, 98 Wn. App. at 204. However, the insurer may overcome the presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in

providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law.[5]  Upon such a showing, the insurance company is entitled to an in camera review of the claims file, and to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured.  *See Escalante*, 49 Wn. App. 375.  If the trial judge finds the attorney-client privilege applies, then the court should next address any claims the insured may have to pierce the attorney-client privilege.[6]

The fraud exception to the attorney-client privilege is deeply rooted in our jurisprudence.  *See* Robert H. Aronson, The Law of Evidence in Washington §501.03[2][h][ii], at 501-24 (4th ed. 2012) (citing *Craig v. A.H. Robins Co.,* 790 F.2d 1, 5 (1st Cir. 1986)).   Our courts have followed a two-step approach.  The first step is to invoke an in camera review and requires a showing that a reasonable

---

[5]  Where an attorney is acting in more than one role, insurers may wish to set up and maintain separate files so as not to co-mingle different functions.

[6] An asserted attorney-client privilege may also be subject to CR 26(b)(4). CR 26(b)(4) provides:

> *Trial Preparation: Materials.* Subject to the provisions of subsection (b)(5) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

person would have a reasonable belief that an act of bad faith tantamount to civil fraud has occurred. *Barry*, 98 Wn. App. at 208; *Escalante,* 49 Wn. App. at 394; *see also Seattle Nw. Sec. Corp.,* 61 Wn. App. at 740. The purpose of the in camera review is to determine "whether the attorney client-privilege applies to particular discovery requests, and whether appellants have overcome that privilege by showing a foundation in fact for the charge of civil fraud." *Escalante,* 49 Wn. App. at 394. *Escalante* suggests if an insurer engages in bad faith in an attempt to defeat a meritorious claim, bad faith was tantamount to civil fraud. *See id.* (citing *United Servs. Auto. Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974). We agree.

To summarize, in first party insurance claims by insured's claiming bad faith in the handling and processing of claims, other than UIM claims, there is a presumption of no attorney-client privilege. However, the insurer may assert an attorney-client privilege upon a showing in camera that the attorney was providing counsel to the insurer and not engaged in a quasi-fiduciary function. Upon such a showing, the insured may be entitled to pierce the attorney-client privilege. If the civil fraud exception is asserted, the court must engage in a two-step process. First, upon a showing that a reasonable person would have a reasonable belief that an act of bad faith has occurred, the trial court will perform an in camera review of the claimed privileged materials. Second, after in camera review and upon a finding there is a foundation to permit a claim of bad faith to proceed, the attorney-client privilege shall be deemed to be waived. However, in first party UIM claims, there is no presumption of waiver by the insurer of the attorney-client privilege but,

consistent with *Escalante*, 49 Wn. App. at 394, and *Barry*, 98 Wn. App. at 206, that privilege may be pierced, among other ways, by the two step procedure described above for showing the bad faith civil fraud exception is applicable.

e.    Addressing the Facts of This Case

Farmers hired an attorney, Hall, to advise it on legal issue of coverage. To the extent Hall issued legal opinions as to Cedell's coverage under the policy, Farmers would be able to seek to overcome the presumption favoring disclosure by showing Hall was not acting in one of the ways the insurer must act in a quasi-fiduciary way toward its insured. However, Farmers hired Hall to do more than give legal opinions. The record suggests that Hall assisted in the investigation. Hall took sworn statements from Cedell and a witness and corresponded with Cedell. Hall assisted in adjusting the claim by negotiating with Cedell. Seven months after the fire, Hall wrote to Cedell offering a "one time offer" of $30,000, which was open for only 10 days, and threatened denial of coverage if the offer was not accepted. It was Hall who was negotiating with Cedell on behalf of Farmers and it was Hall who did not return his calls when Cedell was attempting to respond to the offer. While Hall may have advised Farmers as to the law and strategy, he also performed the functions of investigating, evaluating, negotiating, and processing the claim. These functions and prompt and responsive communications with the insured are among the activities to which an insurer owes a quasi-fiduciary duty to Cedell.

Assuming Farmers was able to overcome the presumption of disclosure based upon a showing that Hall was not engaged in quasi-fiduciary activities, it was

14

entitled to an in camera review and the redaction of his advice and mental impressions he provided to his client.  Here, the trial court did examine in camera the documents to which Farmers asserted an attorney-client privilege.  However, it is not clear the court followed the test we set forth today.  We remand to the trial court for further proceedings consistent with this opinion.

## CONCLUSION

Cedell is entitled to broad discovery, including, presumptively the entire claims file.  The insurer may overcome this presumption by showing in camera its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating the claim.  Upon such a showing, the insurance company is entitled to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in their quasi-fiduciary responsibilities to their insured. The insured is then entitled to attempt to pierce the attorney-client privilege.  If the insured asserts the civil fraud exception, the court must engage in a two step process to determine if the claimed privileged documents are discoverable.  We reverse the Court of Appeals in part, affirm in part, and remand to the trial court for further proceedings consistent with this opinion.

*Cedell (Bruce) v. Farmers Ins. Co. of Wash.,* No. 85366-5

AUTHOR:
    Tom Chambers, Justice Pro Tem.

WE CONCUR:

Justice Debra L. Stephens

Justice Charles W. Johnson           Justice Charles K. Wiggins

Justice Mary E. Fairhurst

16